IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GERALDINE MAEZ,
*on behalf of* MIGUEL E. MAEZ, Jr.,

    Plaintiff,

v.                                                                                1:16-cv-00766-LF

NANCY A. BERRYHILL,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Geraldine Maez's (ex rel. Miguel E. Maez, Jr.) Motion to Reverse and Remand for Rehearing with Supporting Memorandum (Doc. 19), which was fully briefed June 12, 2017. *See* Docs. 23, 24, 25. The parties consented to my entering final judgment in this case. Docs. 4, 8, 9. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred in her application of the treating physician rule to the opinion of Mr. Maez's treating cardiologist, Dr. Luther B. Weathers. I therefore GRANT Ms. Maez's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

**I.      Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Procedural History

Mr. Maez was born in 1964, had a seventh-grade education,[4] and worked in construction and in the oil fields as a roustabout. AR 153, 169, 861–62, 869.[5] Mr. Maez was laid off in December 2008. AR 168. On April 6, 2009, Mr. Maez sustained an aortic aneurysm, and underwent an aortic dissection repair. AR 236, 414, 556. Mr. Maez filed applications for supplemental security income and disability insurance benefits on April 22, 2009, alleging disability since April 6, 2009 due to heart problems, high blood pressure, and his recent heart surgery. AR 133–41, 153–55, 168. The Social Security Administration ("SSA") denied his claims initially on August 20, 2009. AR 85–88. The SSA denied his claims on reconsideration on June 11, 2009. AR 90–96. Mr. Maez requested a hearing before an ALJ. AR 97. On July 22, 2011, ALJ Ann Farris held a hearing. AR 52–78. The ALJ issued her unfavorable decision on September 23, 2011. AR 35–51. Mr. Maez requested that the Appeals Council review the ALJ's unfavorable decision, and submitted additional medical evidence. AR 30–33, 230–34. On February 21, 2013, the Appeals Council denied the request for review. AR 7–13. Mr. Maez appealed to this Court on April 24, 2013. *Maez. v. Social Security Admin.*, No. CV 13-381 WPL, Doc. 1 (D.N.M.). On July 21, 2014, Magistrate Judge Lynch remanded this case, due in part to the ALJ's failure to evaluate "all of the evidence in the record to determine the extent to which Dr. Weather's [July 20, 2011, AR 810] opinion that Maez is unable to work is supported by that record," and due to her failure to "describe **how** Dr. Weather's opinion was inconsistent with the medical evidence." AR 896 (emphasis added).

---

[4] Mr. Maez elsewhere stated that he had a tenth-grade education. AR 173.

[5] Documents 13-1 through 13-62 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

On March 11, 2013, while his first appeal was pending with this Court, Mr. Maez filed a second claim for SSI. AR 836, 929. On November 4, 2014, after receiving Judge Lynch's remand order, the Appeals Council vacated the decision of the Commissioner, remanded the case to the ALJ, and consolidated Mr. Maez's claims. *Id.* On August 4, 2015, ALJ Farris held a second hearing. AR 855–78. On September 26, 2015, Mr. Maez died from a ruptured abdominal aortic aneurysm. AR 1020. His widow, Geraldine Maez, filed a notice to become a substitute party and proceed with Mr. Maez's claim. AR 1018. The ALJ issued her second decision, which was partially favorable, on March 7, 2016. AR 832–54.

The ALJ found that Mr. Maez met the insured status requirements of the Social Security Act through March 31, 2010. AR 839. At step one, the ALJ found that Mr. Maez had not engaged in substantial, gainful activity after his alleged onset date of April 6, 2009. *Id.* At step two, the ALJ found that Mr. Maez had the following medically determinable impairments: "hepatitis C infection, hypertension, and status post aortic aneurysm and dissection repairs." *Id.* The ALJ found that his anxiety and depression were nonsevere. *Id.* At step three, the ALJ found that none of Mr. Maez's impairments, alone or in combination, met or medically equaled a Listing. AR 839–40. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Maez's RFC. AR 840–44. The ALJ found Mr. Maez had the RFC to perform sedentary work except that "he could only occasionally climb stairs, balance, and stoop; never kneel, crouch, or crawl; and should avoid exposure to hazardous conditions including unprotected heights and dangerous machinery, and to extremes of heat and cold." AR 840.

At step four, the ALJ concluded that Mr. Maez was unable to perform his past relevant work as a roustabout. AR 844. At step five, the ALJ found that, prior to September 5, 2014, Mr. Maez was classified as a "younger individual," and could perform unskilled, sedentary jobs that

exist in significant numbers in the national economy—such as motor polarizer, vinyl assembler, and ink printer. AR 844–45. On September 5, 2014, Mr. Maez's age category changed to "an individual closely approaching advanced age." AR 844. The ALJ applied Medical-Vocational Rule 201.10[6] to find him disabled beginning on this date. AR 845–46. Because this Court previously remanded Mr. Maez's case, Mr. Maez was not required to seek Appeals Council review again, and the ALJ's decision stands as the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(a). Mr. Maez timely appealed to this Court on July 1, 2016. Doc. 1.[7]

### IV. Mr. Maez's Claims

Mr. Maez raises two arguments for reversing and remanding this case: (1) the ALJ erred by failing to provide adequate reasons for rejecting the medical opinions of treating cardiologist Dr. Luther B. Weathers; 2) the ALJ deprived him of his due process rights to question the vocational expert. Doc. 19 at 2, 18–25. The Commissioner argues that the ALJ did not err in rejecting Dr. Weathers' opinions because the ALJ's decision is supported by substantial evidence, and "the ALJ's RFC finding reasonably accounted for all of [Mr. Maez's] credible limitations." Doc. 23 at 4.[8] Because I agree that the ALJ erred in her application of the treating physician rule to Dr. Weathers' opinions, I grant the motion to remand to give the ALJ an opportunity to remedy this error. I do not reach Mr. Maez's other alleged error, which "may be

---

[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[7] If the claimant does not file exceptions and the Appeals Council does not assume jurisdiction of the case, the ALJ's decision becomes final 61 days after it is issued. 20 C.F.R. § 404.984 (b)–(d); AR 833. The claimant then has 60 days to file an appeal to this Court. 20 C.F.R. § 404.981.

[8] The Commissioner argues that the ALJ did not completely reject Dr. Weathers' opinions. Doc. 23 at 8. However, "according little weight" to an opinion is "effectively rejecting" the opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

V.  **Analysis**

   A. **Relevant Law**

In analyzing whether a treating physician's opinion is entitled to controlling weight, the ALJ must perform a two-step process. "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.2003)). In making this initial determination, the ALJ must consider whether the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the opinion meets both criteria, the ALJ must give the treating physician's opinion controlling weight. *Id*. To give anything less than controlling weight, the ALJ must demonstrate with substantial evidence that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating [source's] opinion." *Watkins*, 350 F.3d at 1300 (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96-2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)).

If the ALJ does not assign a treating source's opinion controlling weight, step two of the analysis requires the ALJ to apply the six factors listed in the regulations to determine whether to reject a treating source's opinion altogether, or to assign it some lesser weight:

I. **Examining relationship**: more weight is given to the opinion of a source who has examined the claimant than to one who has not;
II. **Treatment relationship**: more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long time over several visits and who has extensive knowledge about the claimant's impairment(s);
III. **Supportability:** more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
IV. **Consistency:** the more consistent the opinion is with the record as a whole, the more weight it should be given;
V. **Specialization**: more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
VI. **Other factors:** any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Watkins*, 350 F.3d at 1301. As the first two factors make clear, even if an ALJ determines that a treating source opinion is not entitled to controlling weight, the opinion still is entitled to deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *see also Watkins* 350 F.3d at 1300.

The ALJ need not explicitly consider and apply each and every factor to each opinion. *Oldham*, 509 F.3d at 1258. "[N]ot every factor for weighing opinion evidence will apply in every case." *Id*. (quoting SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006)). However, "the record must reflect that the ALJ *considered* every factor in the weight calculation." *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009) (unpublished). In addition, the ALJ must "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this

particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins*, 350 F.3d at 1300–01).

"Explicit findings properly tied to each step of the prescribed analysis facilitate meaningful judicial review" and are required to avoid remand. *Chrismon v. Colvin*, 531 F. App'x 893, 901 (10th Cir. 2013) (unpublished); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (finding error where "[a]lthough it [was] obvious from the ALJ's decision that he did not give [the treating source's] opinion controlling weight, the ALJ never expressly stated that he was not affording it controlling weight, nor did he articulate a legitimate reason for not doing so.").

### B. The ALJ Failed to Adequately Analyze Dr. Weathers' Opinions Under the Treating Physician Rule.

Dr. Weathers acted as Mr. Maez's treating cardiologist over a six-year period—beginning in 2009, after Mr. Maez suffered an aortic dissection, and continuing until his death on September 28, 2015. During this time, Dr. Weathers saw Mr. Maez numerous times, and provided four treating source opinions about Mr. Maez's ability to return to work.

In a July 20, 2011 letter, Dr. Weathers stated that he had been treating Mr. Maez since 2009 for coronary artery disease, two myocardial infarctions, severe hypertension, aortic dissection with repair in April 2009, and a "complicated post-operative course related to sternal osteomyelitis."[9] AR 810. Due to ongoing "chronic pain and extreme fatigue with ADL ["activities of daily living"]" since his aortic dissection repair in 2009, Dr. Weathers opined that Mr. Maez would be unable to return to work. *Id.*

---

[9] Osteomyelitis is an infection in a bone. https://www.mayoclinic.org/diseases-conditions/osteomyelitis/symptoms-causes/syc-20375913 (last visited Dec. 12, 2017).

9

On April 16, 2013, Dr. Weathers completed a Medical Assessment of Ability to Do Work-Related Activities. AR 1146. Dr. Weathers opined that due to fatigue, orthostatic intolerance, and dizziness, Mr. Maez was unable to maintain physical effort for long periods of time without a need to decrease activity or pace, or to rest intermittently. *Id*. Dr. Weathers also opined that Mr. Maez had the following limitations: 1) able to lift and carry less than ten pounds both occasionally and frequently due to "ischemic cardiomyopathy with poor heart function" and "poor exercise/functional capacity based on office exercise treadmill [test]"; 2) able to stand and/or walk less than 2 hours in an 8-hour workday due to "ischemic cardiomyopathy with poor heart function" and "poor exercise/functional capacity based on office exercise treadmill [test]"; 3) must periodically alternate sitting and standing to relieve pain or discomfort due to "chronic chest pain secondary to osteomyelitis status post proximal sternectomy"[10]; 4) limited ability to push and pull with lower extremities due to "abdominal aortic aneurysm dissection with repair x2, [and] sternectomy"; 5) limited ability to reach in all directions due to "proximal sternectomy"; 6) limited to only occasional kneeling, stooping, crouching, and crawling due to "poor exercise functional capacity, [i]schemic cardiomyopathy, sternectomy, [and] abdominal aortic dissection." AR 1146. Dr. Weathers also stated that Mr. Maez suffered from a "pain producing impairment, injury, or sickness" that caused severe pain, sleep disturbances, fatigue, and caused him to "lie down at regular intervals." *Id.* Dr. Weathers opined that Mr. Maez had numerous non-exertional limitations:

- Marked limitation in the ability to maintain attention and concentration for extended periods (i.e. 2-hour segments);
- Moderate limitation in the ability to perform activities within a schedule;
- Marked limitation in the ability to maintain regular attendance and be punctual within customary tolerance;

---

[10] A sternectomy is the removal of part or all of the sternum. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3537184/ (last visited Dec. 12, 2017).

- Marked limitation in the ability to maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently;
- Marked limitation in the ability to sustain an ordinary routine without special supervision;
- Marked limitation in the ability to complete a normal workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.

AR 1147.

On July 17, 2015, Dr. Weathers completed a second Medical Assessment of Ability to Do Work-Related Activities. AR 1519–20. This assessment was similar to his 2013 assessment, with the following notable differences: 1) ability to lift and carry both occasionally and frequently was reduced to 5 pounds; 2) no longer able to do repetitive actions (handling and fingering); 3) ability to maintain attention and concentration for extended periods was reduced from marked to moderate; 4) ability to perform activities within a schedule was increased from moderate to marked. AR 1519–20.

Finally, in a letter on August 5, 2015, Dr. Weathers opined that Mr. Maez suffered from recurrent dissecting thoracic aortic aneurysms, "a frequently fatal condition where the aorta in the chest is trying to tear open." AR 1645. Dr. Weathers opined that Mr. Maez would eventually die from the condition, and that it was his opinion that Mr. Maez "is not able to work, and has not been able to do so since 2009." *Id.*

The ALJ's entire assessment of Dr. Weathers' opinions is limited to the following paragraph:

> Dr. Weathers' opinion, as set out in a letter dated July 20, 2011 and on medical source statement forms dated April 16, 2013 and July 17, 2015, is not entitled to controlling weight (Exs. l6F, 25F, and 29F/2-3). It is not well supported by medically acceptable clinical and laboratory diagnostic techniques and it is inconsistent with the other substantial evidence in the case record (See SSR 96-2p and 20 CFR 404.1527(c)(2) and 416.927(c)(2)). Furthermore, having considered the factors set out in 20 CFR 404.1527(c)(2)(i), (c)(2 )(ii), and (c)(3) through (c)(6) and 416.927(c)(2)(i), (c)(2)(ii), and ( c )(3) through ( c )(6), I find that his

11

>
> opinion is entitled to little weight. Dr. Weathers is a cardiologist and thus his opinion is about his area of specialty. In addition, he did have a longstanding treatment relationship with the claimant. However, the severe functional limitations he indicated are not supported and are inconsistent with his own treatment notes. For example, on February 19, 2013, the claimant told Dr. Weathers he was "feeling great" (Ex. 19F/2). Dr. Weathers stated on November 5, 2013 that the claimant's heart condition was stable (Ex. 26F/39).

AR 843.

While the ALJ's decision outlines both steps of the treating physician rule, the decision lacks adequate analysis, and is not supported by substantial evidence. At the first step of the treating physician analysis, the ALJ claims that Dr. Weathers' opinion is "not well supported by medically acceptable clinical and laboratory diagnostic techniques **and** it is inconsistent with the other substantial evidence in the case record." AR 843. However, the ALJ's decision discusses neither the clinical and laboratory diagnostic techniques Dr. Weathers used, nor why these techniques are not medically acceptable.[11] The ALJ's decision also contains no analysis of how Dr. Weathers' opinion is inconsistent with other substantial evidence in the case record. In weighing a treating physician's opinion, the ALJ is required to "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" she gave to the opinion "and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5. "An ALJ's reasoning is not sufficiently specific if she merely states an opinion is unsupported by or inconsistent with the medical evidence without further explanation." *Galindo v. Berryhill*, No. CV 16-804 CG, 2017 WL 3207914, at *4 (D.N.M. May 3, 2017) (internal citations omitted); *see*

---

[11] "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence. Whether a medical opinion is well-supported will depend on the facts of each case. It is a judgment that adjudicators must make based on the extent to which the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and requires an understanding of the clinical signs and laboratory findings in the case record and what they signify." SSR 96-2p, 1996 WL 374188, at *2.

*also Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between [the treating physician's] opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings.") The ALJ's conclusory rejection of Dr. Weathers' opinions at step one is insufficient to permit meaningful review. Remand is therefore required.

At step two of the treating physician analysis, the ALJ acknowledged that Dr. Weathers had a longstanding treatment relationship with Mr. Maez, and also acknowledged that his opinion was in his area of specialization. The ALJ, however, gave his opinion little weight, purportedly because "the severe functional limitations he indicated are not supported and are inconsistent with his own treatment notes." AR 843. The ALJ, however, failed to support this conclusion with substantial evidence. There is simply no discussion about how Dr. Weathers' opinions are unsupported or inconsistent with his own treatment notes. Instead, the ALJ points to one of Mr. Maez's many visits to Dr. Weathers where he said he was "feeling great," and one notation by Dr. Weathers indicating that Mr. Maez's condition was stable. *Id.* Mr. Maez argues that Dr. Weathers' notation that his condition is "stable" does not mean that his condition is not severe, or that it does not limit his ability to work. Doc. 19 at 21. I agree. Stable is defined as "in a currently unchanging state, neither improving nor deteriorating." COLLINS DICTIONARY OF MEDICINE (2004, 2005), available at https://medical-dictionary.thefreedictionary.com/stable (last accessed Dec. 5, 2017). It is unclear why the ALJ cites the notation of stability in discrediting the limitations in Dr. Weathers' opinions, and it does not constitute substantial evidence for doing so.

13

The second reason the ALJ gave for rejecting Dr. Weathers' opinions also falls short. The fact that Mr. Maez told the doctor he was "feeling great" at one visit is not substantial evidence to discredit his treating physician's opinion. First, there are numerous other notations in Dr. Weathers' records showing that Mr. Maez had ongoing pain and limitations. *See, e.g.*, AR 518 (indicating that Mr. Maez complained of positional and pleuritic chest pain in December 2009); AR 830 (indicating that Mr. Maez complained of extreme shortness of breath with any amount of exertion); AR 1105 (indicating that Mr. Maez "gets short of breath with minimal exertion," has "a lot of chest pain," and when he is in pain his blood pressure gets substantially higher); AR 1103 (indicating Mr. Maez suffers from "chronic pain"); AR 1186–87 (indicating that Mr. Maez complained of pain in his chest, shortness of breath, and dizziness; also indicating that Mr. Maez had been put on a pain contract due to the narcotic pain medications required to manage his pain); AR 1181–82 (indicating that Mr. Maez complained of shortness of breath, dizziness, and chest pain, and indicating that he had "recently been to the ER for sharp upper left thoracic back pain"); AR 1171 (indicating that Mr. Maez's "activity is extremely limited to ADL's and minor household duties"); AR 1190 (indicating that Mr. Maez had recently "been having reoccurrence of chest pain, typical to his previous episodes of dissection"); *see also* AR 882–92 (Judge Lynch's summary of medical evidence in his order remanding this case); Doc. 19 at 5–15 (Mr. Maez's summary of medical evidence). Given the fact that the record is replete with six years of Mr. Maez's complaints of pain and other symptoms, the ALJ's rejection of Dr. Weathers' opinion based on a single report from Mr. Maez that he was "feeling great" on a particular day constitutes no more than a scintilla of evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects."); *see also Lee v. Barnhart*, 117 F. App'x 674, 678 n.2 (10th Cir. 2004) (unpublished) ("An ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability."). Second, Dr. Weathers relied on more than Mr. Maez's subjective reports of pain and fatigue to support his opinions about Mr. Maez's work limitations. While Dr. Weathers found Mr. Maez limited *in part* to due to his pain, orthostatic intolerance, fatigue, and dizziness, he also found Mr. Maez limited due to the nature of his diagnoses and health conditions, and due to his performance on an office treadmill test. AR 810, 1146–47, 1519–20, 1645. The ALJ's decision fails to adequately discuss Dr. Weathers' opinions, or the medical evidence Dr. Weathers used to support his opinions.

The Commissioner attempts to salvage the ALJ's skeletal analysis by arguing that the ALJ "thoroughly reviewed Dr. Weather's medical records" "elsewhere in the decision." Doc. 23 at 6. The Commissioner cites *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished) in support of her argument that the ALJ was not required to repeat her earlier discussion of the medical evidence. Doc. 23 at 6. *Endriss*, however, is distinguishable. In *Endriss*, the ALJ discussed the opinions of two separate treating physicians. 506 F. App'x 775–77. The ALJ rejected portions of the first treating physician's opinion, finding that these portions were "inconsistent with objective medical evidence of record." *Id.* at 775. The ALJ specifically cited several exhibits, which he had discussed in detail a few pages earlier in the opinion, in support of this finding. *Id*. The ALJ then went on to reject the opinion of the second treating physician whose "opinion of [claimant's] functional restrictions was virtually identical to the restrictions the ALJ had just assigned 'little weight' to from [the first treating physician's] opinion." *Id.* at 776–77. The Court in *Endriss* concluded that the ALJ's discussion of the second

15

treating physician's opinion was "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 777 (quoting *Oldham*, 509 F.3d at 1258).

In this case, unlike *Endriss*, it is not clear why the ALJ gave Dr. Weathers' opinions little weight. The ALJ failed to cite any specific, substantive evidence to support her rejection of Dr. Weathers' proffered limitations. The Commissioner points to the ALJ's discussion of Dr. Weathers' records earlier in her opinion, and urges the Court to find that this discussion is substantial evidence to support the ALJ's decision to give Dr. Weathers' opinions little weight. Doc. 23 at 6–8. The Court declines the invitation to draw connections the ALJ did not make herself. While the ALJ did discuss some of Dr. Weathers' medical records "and made various observations about how these records reflected [on Mr. Maez's] alleged limitations—[she] did not attempt to make any specific connections between this objective evidence and [Dr. Weathers' opinions] or the weight that should be afforded it." *O'dell v. Colvin*, No. 1:15-CV-00628-CBS, 2016 WL 5395247, at *5 (D. Colo. Sept. 27, 2016). The ALJ's earlier detailed discussion of some of Dr. Weathers' medical records related to her finding that Mr. Maez's statements about his limitations were not "entirely credible," and is part of the ALJ's credibility determination. *See* AR 841–42. The ALJ's decision, however, is devoid of any specific discussion of Dr. Weathers' opinions, and how these opinions are "not supported [or] are inconsistent with his own treatment notes."

A discussion of medical records in the context of a credibility determination compares a claimant's statements about the limitations caused by his or her symptoms with the medical records and other relevant evidence in the record. SSR 96-7P, 1996 WL 374186, at *1 (S.S.A. July 2, 1996). In a treating physician analysis, on the other hand, the ALJ must compare the

16

limitations noted in the treating physician's opinions with "medically acceptable clinical and laboratory diagnostic techniques" and "substantial evidence in the individual's case record." SSR 96-2p, 1996 WL 374188, at *2; *see also Galindo*, 2017 WL 3207914, at *4 (holding that an ALJ "may not reject an opinion as unsupported by the evidence without explaining how the opinion and evidence conflict"); *Valenzuela v. Berryhill*, No. 16cv522 CG, 2017 WL 3207159, at *4 (D.N.M. May 2, 2017) (holding ALJ's discussion of evidence in considering claimant's credibility insufficient to reject treating physician's opinion because Court was "left to guess at how exactly [the treating physician's] findings were unsupported by the record"). The Court must evaluate the ALJ's decision "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (internal citation omitted). I find the reasons the ALJ gave for rejecting the opinions of Dr. Weathers' insufficient, and decline the Commissioner's invitation to draw analytical connections not present in the ALJ's decision. "Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process." *Allen v. Barnhart,* 357 F.3d 1140, 1142 (10th Cir. 2004).

## VI. Conclusion

The Court finds that the ALJ erred in analyzing the opinions of Mr. Maez's treating cardiologist, Dr. Weathers. The ALJ did not complete the first step of the treating physician analysis. The ALJ failed to support the second step of the treating physician analysis with substantial evidence. The Court remands so that the ALJ can remedy these errors.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 19) is GRANTED.

17

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent